IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SUSAN NORRIS PAYNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-00343-JHE |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Susan Norris Payne ("Payne") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). (Doc. 12). Payne timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED.**

**I. Factual and Procedural History**

Payne protectively filed applications for DIB and SSI on September 14, 2015, alleging she became disabled on February 28, 2005. (Tr. 84). The agency denied both applications on November 25, 2015. (Tr. 208, 213). Payne requested a hearing before an Administrative Law Judge ("ALJ") on January 27, 2016. (Tr. 220-21). The ALJ held a hearing on November 9, 2017,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 11).

1

and subsequently denied Payne's claims on March 26, 2018. (Tr. 94). Payne sought review by the Appeals Council, but it denied her request on February 4, 2019. (Tr. 1-4). On that date, the ALJ's decision became the final decision of the Commissioner.  Payne initiated this action on July 26, 2019. (Doc. 1 at 54).

Payne was fifty-two on the date of the ALJ's decision.  (Doc. 12 at 2).  Payne has a high school education has past work experience as a collections clerk. (Tr. 93-92).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ

---

[2] In general, the legal standards applied are the same whether a claimant seeks disability insurance benefits ("DIB") or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999);

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show such work exists in the national economy in significant numbers.  *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Payne met the insured status requirements of the Social Security Act through June 30, 2009, and that Payne had not engaged in substantial gainful activity since her alleged onset date, February 28, 2005. (Tr. 87). At Step Two, the ALJ found that Payne has the following severe impairments: degenerative disc disease, carpal tunnel syndrome, hiatal hernia, Ménière's disease, peripheral neuropathy, migraine headaches, stage II kidney disease, benzodiazepine dependence, a depressive disorder, anxiety, and post-traumatic stress disorder. (*Id*.). At Step Three, the ALJ found that Payne does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 89).

Before proceeding to Step Four, the ALJ determined Payne's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments.  *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined Payne had the RFC

> to perform light work . . . lifting 20 pounds occasionally and 10 pounds frequently, sitting six out of eight hours, standing and walking six out of eight hours, but never climbing ladders, ropes or scaffolds, never kneeling or crawling, avoiding all exposure to workplace hazards . . . and fingering and handling frequently bilaterally.

> She can understand, remember and carry out simple instructions, can maintain attention and concentration for two-hour periods at a time, can make simple work-related decisions, can adapt to routine and infrequent workplace changes, can perform jobs that do not require interaction with the general public, and can have occasional interaction with coworkers.

(Tr. 90).

At Step Four, the ALJ determined that Payne's RFC makes her unable to perform any past relevant work. (Tr. 92). At Step Five, the ALJ found that, based on her age, education, work experience, and RFC, Payne can perform jobs that exist in significant numbers in the national economy. (Tr. 93). Specifically, the ALJ found that Payne could perform the jobs of hand packager, laundry folder, and small parts assembler. (*Id.*) Accordingly, the ALJ determined that Payne is not disabled and denied her claim. (Tr. 94).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Payne raises five arguments in support of disability. First, Payne argues that the ALJ improperly drew adverse inferences from her inability to afford medical treatment. (Doc. 12 at 2). Second, Payne argues that the ALJ failed to state with clarity her grounds for repudiating the opinions of Payne's doctors. (*Id.*). Third, Payne contends that the ALJ's determination that she retains the RFC to perform light work is not supported by substantial evidence. (*Id.*). Fourth, Payne argues that the Appeals Council improperly refused to review evidence dated after the ALJ's

5

decision without considering whether the evidence was chronologically relevant. (*Id*.). Last, Payne argues that the ALJ's decision was not based on substantial evidence in light of the evidence she submitted to the Appeals Council. Each of these arguments are discussed below.

### A. The ALJ Did Not Inappropriately Draw Adverse Inferences from Payne's Inability to Afford Medical Treatment

Payne first argues that the ALJ drew adverse inferences from her inability to afford treatment by discrediting her pain testimony. The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5. The ALJ

may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996 WL 364186 at * 4-8. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

Noncompliance with prescribed medical treatment is excused when a claimant is unable to afford such treatment. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1998)) (quotations omitted). If a claimant "cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Dawkins*, 848 F.2d at 1213. An ALJ does not commit reversible error, however, by failing to consider the financial reasons for a claimant's noncompliance when her finding that a claimant is not disabled is "not significantly based on a finding of noncompliance." *Ellison*, 355 F.3d at 1275.

Payne's argument that the ALJ drew adverse inferences from her inability to afford medical treatment by discrediting her pain testimony is not supported by the record. First, the ALJ found that Payne met the requirements of the pain standard because her "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 91). The ALJ also found, however, that Payne's "statements concerning the intensity, persistence and limiting effects

of these symptoms are not entirely consistent" with the medical evidence. (*Id.*). The ALJ stated that Payne's statements regarding her pain were inconsistent. Although Payne testified that she began taking methadone in October 2017 because she could no longer afford her prescribed pain medications, medical records indicate that Payne began taking methadone prior to this date, and that while taking methadone, Payne was actively taking and seeking additional prescription medications. (Tr. 144-45, 1447-50). In July 2017, Payne told Dr. Feist that she had been taking 70 milligrams of methadone daily, as well as anti-depressants and anti-anxiety medications four times a day. (Tr. 1447). While Payne told Dr. Feist that she could longer afford the medication for her stress seizures, she expressed her willingness to take a higher dosage of another prescription anti-anxiety medication, which Dr. Feist prescribed. (Tr. 1447-48). Further, Dr. Feist noted Payne had received "prescription pain medication written by at least four doctors in the past several months," and that Payne "cr[ied] and beg[ged]" for Dr. Feist to prescribe her Klonopin and Diazepam (both benzodiazepines) on March 30, 2017. (Tr. 1447-50).

The ALJ relied on these records in determining that Payne could afford treatment for her pain and anxiety, despite her claims otherwise. The ALJ found that because Payne was taking several medications while also seeking additional medication, "it is clear that she could obtain treatment other than the 70 milligrams of methadone." (Tr. 91). *See also Dawkins*, 848 F.2d at 1213 (a condition is disabling if a claimant "cannot afford the prescribed treatment and *can find no way to obtain it*") (emphasis added). Moreover, the ALJ properly discredited Payne's testimony because she discussed her specific reasons for doing so while also referencing the medical records that conflicted with this testimony. *See Leiter v. Comm'r of Soc. Sec. Admin.*, 377 F. App'x 944, 948 (11th Cir. 2010) ("Because the ALJ clearly articulated explicit reasons for rejecting [the claimant's] subjective complaints, we find that the ALJ's credibility determination was supported

by substantial evidence."). Thus, the ALJ did not discredit Payne's testimony regarding the severity of her symptoms due to her inability to afford treatment, but rather because "some of [Payne's] complaints of pain and anxiety seem to be a reflection of drug seeking behavior."[4] (Tr. 91).

### B. The ALJ Adequately Evaluated the Opinions of Payne's Doctors

Payne's second argument is that the ALJ improperly evaluated the opinions of consultative examining physicians Dr. Jack L. Bentley, Jr. and Dr. Anand S. Iyer because she failed to state her grounds for doing so with clarity.[5] An ALJ is required to "state with particularity the weight given to different medical opinions and the reasons therefor" when evaluating a claim. *Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 795 (11th Cir. 2019 (per curiam) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)) (internal quotation marks omitted). Further, an ALJ is required to "give the medical opinions of treating physicians substantial or considerable weight" unless she can show good cause for not doing so. *Winschel*, 631 F.3d at 1179. The medical opinions of doctors who only examined a claimant on one occasion, however, are not

---

[4] The ALJ fully stated: "as for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the claimant testified that she could no longer afford medical treatment for her pain, so she began going to a methadone clinic for pain treatment, while on July 17, 2017, treatment notes at CED Mental Health Center reflect that the claimant had been receiving prescription pain medications from at least four different doctors, so it is clear that she could obtain treatment other than the 70 milligrams of methadone she was reportedly taking." (Tr. 91). In arguing that the ALJ made adverse inferences from her inability to afford treatment, Payne omits the portion of the ALJ's statement where she relies on medical records to support her conclusion that Payne's statements about her ability to afford treatment are inconsistent. (Doc. 12 at 34).

[5] Payne also argues that the ALJ erred by failing to show "good cause" for rejecting portions of Dr. Bentley and Dr. Iyer's opinions. (Doc. 12 at 36). The ALJ did not err here, however, because an ALJ is only required to show "good cause" when repudiating the opinions of treating physicians. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam). Dr. Iyer was not one of Payne's treating physicians because he saw her on only one occasion for a consultative examination. (Tr. 688-91). Dr. Bentley was not one of Payne's treating physicians because he also only saw her once for a consultative examination. (Tr. 693-97).

entitled to "substantial or considerable weight" because they are not considered treating physicians. *Crawford*, 363 F.3d at 1160 (stating that an ALJ correctly found that the opinion of a physician who examined the claimant once was not entitled to great weight because he was not a treating physician).

In addition to a physician's treating relationship with the claimant, an ALJ considers several other factors when assigning weight to medical opinions, including the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. § 404.1527(c). An ALJ may discount a physician's opinion when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See id*. Accordingly, an ALJ's decision should be affirmed where she states the weight given different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179 (quoting *Sharfaz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). An ALJ who fails to do this, however, makes it "impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Here, the ALJ clearly stated the weight given to Drs. Iyer and Bentley and provided her rationale for each.[6] (Tr. 91-92). First, after a single consultative examination, Dr. Iyer opined that Payne "may have some impairment . . . in standing, walking, climbing steps, bending, lifting,

---

[6] Although Payne's argument only pertains to the opinions of Dr. Bentley and Dr. Iyer, in order to fully analyze the weight the ALJ gave to different medical opinions, this section also discusses the opinions of Dr Williams, whose opinions the ALJ evaluated alongside Dr. Bentley and Dr. Iyer's.

twisting, carrying, and handling." (Tr. 688-90; doc. 12 at 37). Dr. Iyer also stated that Payne "does not have significant limitations . . . in sitting, reaching overhead, hearing, and speaking." (Tr. 690). The ALJ gave partial weight to Dr. Iyer's opinions, but also stated that other evidence did not support his findings that Payne had limitations in "standing and walking or meeting the lifting and carrying requirements of light work." (Tr. 92). The ALJ's decision to discredit some of Dr. Iyer's opinions because they were inconsistent with the record is permissible. *See* 20 C.F.R. § 404.1527(c).

Next, consulting psychologist Dr. Bentley found that Payne's psychiatric symptoms of depression and anxiety were exacerbated by her history of Ménière's disease. (Tr. 695). He opined Payne has a "marked limitation in her ability to sustain complex or repetitive work-related activities," that Payne's "impairment level for simple tasks [falls] in the mild range," and that Payne has a "similar restriction in her ability to communicate effectively with coworkers and supervisors." (Tr. 92, 697). The ALJ gave partial weight to Dr. Bentley's opinions. (Tr. 92). Specifically, the ALJ found that the evidence in the record supported Payne's diagnosis of Ménière's disease, but not its severity. (Tr. 92). The ALJ indicated he imposed restrictions on Payne's activities as a result of her of Ménière's disease symptoms. (*Id.*). Further, in assessing Payne's RFC, the ALJ clearly imposed restrictions consistent with Dr. Bentley's findings with respect to Payne's mental impairments: he indicated Payne could "remember and carry out simple instructions . . . maintain attention and concentration for two-hour periods at a time . . . make simple work-related decisions . . . adapt to routine and infrequent workplace changes . . . perform jobs that do not require interactions with the general public, and . . . have occasional interaction with coworkers." (Tr. 90). Payne provides no argument or explanation for why the ALJ would

11

have imposed different restrictions had he fully accepted Dr. Bentley's opinion, and thus no reason to conclude that the ALJ erred.

To the extent Payne challenges the ALJ's evaluation of state agency psychiatric consultant Dr. Samuel D. Williams, Dr. Williams opined that Payne "did not have a medically determinable impairment as of the date last insured, but did have a 'severe' mental impairment for purposes of the application for supplemental security income," and that Payne would miss one or two days of work a month due to psychiatric symptoms. (Tr. 92). The ALJ stated that she gave "some weight" to Dr. Williams' opinions, but "not to the extent that [Payne] would miss one or two days of work a month" because "the medical evidence of record does not support his opinion with regard to the degree of absenteeism." (Tr. 92). Again, the ALJ's decision to discredit some of Dr. Williams' opinions because they were inconsistent with the record is permissible. *See* 20 C.F.R. § 404.1527(c).

### C. The ALJ's Determination That Payne Has the Residual Functional Capacity to Perform Light Work Is Supported by Substantial Evidence

Payne's third argument is that the ALJ's determination that she can perform light work is not supported by substantial evidence because the ALJ did not refer to "supporting evidence" in her RFC assessment. (Doc. 12 at 43). A claimant's RFC is based upon "an assessment . . . of [her] remaining ability to do work despite [her] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). In determining a claimant's RFC, an ALJ "must consider all relevant medical and other evidence." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). An ALJ's determination that a claimant is "limited to a particular work level" must be supported by substantial evidence. *Id.*

Here, the ALJ's determination that Payne has the RFC to perform light duty is supported by substantial evidence. First, Payne claims that the record does not support "a finding that [she]

can perform sustained work activities," and that the ALJ failed to consider her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." (Doc. 12 at 44). This claim is not consistent with the ALJ's RFC determination, however, because the ALJ's determination explicitly considers Payne's abilities to do such things. (Tr. 90). Specifically, the ALJ found that, based on her consideration of the "entire record," Payne is capable of

> Lifting 20 pounds occasionally and 10 pounds frequently, sitting six out of eight hours, standing and walking six out of eight hours, but never climbing ladders, ropes, or scaffolds, never kneeling or crawling, avoiding all exposure to workplace hazards (e.g. dangerous machinery, unprotected heights) and fingering and handling frequently bilaterally. She can understand, remember, and carry out simple instructions, can maintain attention and concentration for two-hour periods at a time, can make simple work-related decisions, can adapt to routine and infrequent workplace changes, can perform jobs that do not require interaction with the general public, and can have occasional interaction with coworkers.

(Tr. 90).

The ALJ then stated the rationale for her finding Payne can perform light work in significant detail, while referring to supporting evidence. First, the ALJ discussed medical records pertaining to Payne's hernia and peripheral neuropathy, and how these ailments impact Payne. (Tr. 91) (citing exhibits 10F, 12F, 6F, and 7F). Next, the ALJ discussed the inconsistencies with Payne's statements regarding the intensity, persistence, and limiting effects of her symptoms and certain medical evidence. (Tr. 91) (citing exhibit 22F). The ALJ then discussed the opinions of Doctors Iyer, Bentley, and Williams, and states the weight given to each and references the evidence that supports her conclusions. (Tr. 92) (citing exhibits 7F, 8F, 3A, and 4A). Further, the ALJ stated that although the Payne's statements regarding the intensity, persistence, and limiting effects of her Ménière's disease are not entirely consistent with the record, she limited Payne's activities regarding climbing ladders, ropes, scaffolds, or operating dangerous machinery to decrease the risk to Payne. Notably, Payne does not cite any medical evidence that contradicts the

ALJ's conclusions, nor does she state with specificity which evidence the ALJ failed to consider in making such conclusions. Accordingly, the ALJ's RFC determination is supported by substantial evidence because the ALJ relied upon "such relevant evidence as a reasonable person would accept as adequate to support [her] conclusion." *Bloodsworth*, 703 F.2d at 1239.

### D. The Appeals Council Properly Considered Post-Hearing Evidence Submitted by Payne

Payne's fourth argument is that the Appeals Council erred by "refus[ing] to review" post-hearing evidence "solely because it was dated after the ALJ's decision," and that it also failed to consider whether this evidence was chronologically relevant. (Doc. 12 at 46). "With a few exceptions, [a] claimant is allowed to present new evidence at each stage of this administrative process." *Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015) (per curiam). And, although the Appeals Council has the discretion not to review an ALJ's denial of benefits, it "must consider new, material and chronologically relevant evidence that the claimant submits." *Id*. (internal quotation marks omitted). New evidence is noncumulative evidence that was not previously presented to the ALJ, and that evidence is material when "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Post-hearing evidence is material if "there is a reasonable probability that [it] would change the administrative outcome." *Id.*. Post-hearing evidence is chronologically relevant if it relates back to the date of the ALJ's decision; this also applies to treatment rendered after a decision date that is relevant to the other medical evidence the ALJ considered in making her decision. *Washington*, 806 F.3d at 1322.

Here, the Appeals Council properly considered post-hearing evidence submitted by Payne. First, the Appeals Council found that medical evidence Payne submitted from February 28, 2018 and March 19, 2018 was not material because it did "not show a reasonable probability that it

would change the outcome of the decision." (Tr. 2). *See Hyde*, 823 F.2d at 459. These records indicate that Payne suffers from opiate dependence, obesity, Ménière's disease, convulsion disorder (stress seizures), depression, and post-traumatic stress disorder. (Tr. 100-125). This evidence does not impact the ALJ's decision, because the ALJ previously considered evidence of these impairments in making her decision to deny Payne benefits. (Tr. 687-92, 693-97, 1447-50, 180-90, 191-207). Since they are cumulative, they are not "new" within the meaning of the regulations. Further, this evidence provides no additional insight into Payne's functional ability. Payne briefly argues that the post-hearing evidence could change the ALJ's decision, but she primarily argues that the Appeals Council erred by failing to consider the evidence; this argument is not supported by the record, which indicates that the Appeals Council did consider the evidence because it explicitly refers to each item, and the reason it is inadequate, in its decision denying Payne's appeal. (Doc. 12 at 46-51; Tr. 2). Accordingly, the post-hearing evidence would not change the administrative outcome because the ALJ was previously presented with and considered adequate evidence of the diagnoses contained in the post-hearing evidence. *See Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986) (stating that "there is a reasonable possibility that new evidence [will] change [an] administrative outcome" where the evidence relates to an alleged impairment, "about which there was inadequate evidence presented to the ALJ.")

Next, the Appeals Council found that evidence Payne submitted from April, May, June, August, and September 2018 did not relate to the date of the ALJ's decision in March 2018. (Tr. 2). While the records Payne submitted from April, May, and June are chronologically relevant in that they relate to Payne's alleged symptoms for the relevant period of disability, they are not material because they are simply reiterations of impairments that the ALJ already considered in making her decision to deny benefits.  (Tr. 28-41, 47-64, 85-80).  *See Washington*, 806 F.3d at

1320 (stating that the Appeals Council is required to consider evidence that is both material *and* chronologically relevant) (emphasis added). The records Payne submitted from August and September 2018 both pertain to hip pain, a symptom which Payne did not allege. (Tr. 16-17). These records also indicate an onset of "early August 2018," which is outside the period of disability the ALJ was required to consider. (Tr. 16). Thus, the post-hearing evidence from August and September 2018 is not chronologically relevant because it does not relate to the period of disability that Payne alleged.[7] (Tr. 84). *See Washington*, 806 F.3d at 1322.

### E. The ALJ's Decision Is Supported by Substantial Evidence

Last, Payne argues that the ALJ's decision was not supported by substantial evidence in light of the post-hearing evidence submitted to the Appeals Council, and that the vocational expert ("VE") testimony relied upon by the ALJ does not constitute substantial evidence because it was not based on a correct statement of Payne's impairments. (Doc. 12 at 51-52). An ALJ's decision will not be disturbed "if, in light of the record as a whole, it appears to be supported by substantial evidence." *Lewis*, 125 F.3d at 1439. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. at 1440.

This argument fails. First, upon review of the record as a whole, the ALJ's decision is supported by substantial evidence. The ALJ's determination that Payne is capable of performing light work is consistent with the medical evidence of record, which is shown by the ALJ's

---

[7] In these records, the doctor who treated Payne opined that "her pain is certainly out of proportion to her exam today." (Tr. 17). Although this evidence was not considered by the ALJ, it does bolster her conclusion that Payne's statements regarding the "intensity, persistence, and limiting effects of her symptoms" are not entirely consistent with medical evidence. (Tr. 91). The doctor also noted that a CT scan of Payne's pelvis and lumbar spine "demonstrate no acute or aggressive abnormalities." (Tr. 25).

discussion and consideration of the evidence upon which she based each of her conclusions. (Tr. 87-89, 91-92). In making her argument regarding the post-hearing evidence, Payne states that district courts are required to review the decision of the Appeals Council in light of the newly submitted evidence. (Doc. 12 at 51). As shown in the previous section, this Court has reviewed both the Appeals Council's decision and the new evidence, and it does not support Payne's argument that the ALJ's decision is not supported by substantial evidence. Further, the hypothetical question the ALJ posed to the VE encompassed the impairments that the ALJ found Payne to have based on the medical evidence of record and limited her workplace activities according to those impairments. (Tr. 166-67). Accordingly, the ALJ's decision was supported by "such relevant evidence that a reasonable person would accept as adequate to support a conclusion." *Lewis*, 125 F.3d at 1440.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Payne's claim for DIB and SSI is **AFFIRMED**, and this action is **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 19th day of November, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE